CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 28, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LINDA G. D.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:25-cv-00625 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | By: Elizabeth K. Dillon, Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Linda G. D. (Linda) brought this action for review of the final decision made by defendant, the Commissioner of Social Security (Commissioner), finding her not disabled and therefore ineligible for supplemental security income under the Social Security Act.[2, 3] (Compl., Dkt. No. 1.) Both Linda and the Commissioner moved for summary judgment. (Dkt. Nos. 18, 19.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred the motion to U.S. Magistrate Judge C. Kailani Memmer for a report and recommendation (R&R). On August 3, 2026, the magistrate judge issued her R&R, finding that substantial evidence supported the Commissioner's final decision. (R&R, Dkt. No. 20.) Linda filed an objection to the R&R on

[1] Because of privacy concerns, the court is adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

[2] At the outset, the court notes that on August 30, 2018, in a separate, prior action, a different ALJ, ALJ Raymond Rogers, denied a separate application for supplemental security income under the Social Security Act. (Admin Tr. 105–15; Dkt. No 11-3.) This court affirmed the Commissioner's decision in a separate case. *Linda D. v. Saul*, No. 7:19-cv-595, slip op. at 1 (W.D. Va. Mar 15, 2021). In this case, Linda seeks review of her denial by ALJ Thomas Erwin. Because the prior action and this one are different actions concerning different facts, the court does not summarize the record of that prior action here.

[3] Although Linda initially applied for disability insurance benefits in addition to supplemental security income (Admin. Tr. 268–69, Dkt. No. 11-5), she withdrew her application for disability insurance benefits at a hearing on June 12, 2024 (Admin. Tr. 67–68, Dkt. No. 11-2), and does not renew her application for them in this action. (*See generally*, Dkt. Nos. 18, 21.) Accordingly, the court does not address disability insurance benefits further.

August 17, 2026 (Pl. Obj., Dkt. No. 21), and the Commissioner filed a response thereafter (Resp. to Pl. Obj., Dkt. No. 22).

After *de novo* review of the pertinent portions of the record, the R&R, and the filings by the parties, in conjunction with the applicable law, the court agrees with the magistrate judge's recommendation. Accordingly, the court will overrule Linda's objection, adopt Judge Memmer's R&R in its entirety, and affirm the Commissioner's final decision.

## I. BACKGROUND

The court adopts the procedural background and recitation of facts as set forth in the report. (R&R at 2–15.) Briefly, the Administrative Law Judge (ALJ) determined that Linda suffers from the following severe impairments: bipolar disorder, anxiety, borderline personality disorder, substance use disorder, a back impairment, hepatitis C, and a history of pancreatitis. (Admin. Tr. at 20.) These impairments, or the combination of these impairments, the ALJ reasoned, do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id*. at 19–22.)

The ALJ proceeded to conclude that Linda retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with certain exceptions. (*Id.* at 23–30.) The ALJ specified that Linda "must avoid hazards, unprotected heights, and crawling," that the "[i]nstructions and tasks [she is given should be] limited to those that can be learned in thirty days or less," that she "cannot perform production rate or pace work [such as work on] assembly lines or strict hourly quotas," and that, while Linda "can have occasional interaction with the public, [she] would do better working with things rather than people." (*Id.* at 23.) The ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that the claimant can perform," including work as an "[o]ffice helper," "[m]arker," or "[m]ail [s]orter." (*Id.* at 30–31.) Thus, the ALJ determined that plaintiff was not disabled. (*Id.* at 31–32.)

II. DISCUSSION

**A. Standard of Review**

When reviewing the decision of an ALJ, the court must uphold the factual findings and final decision of the Commissioner if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Rather, where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, [the court] defer[s] to the ALJ's decision." *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (internal quotation marks omitted).

Nonetheless, an "ALJ must adequately explain his reasoning" to allow the court to "engage in a meaningful review." *Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an

ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Instead, "ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). If it does so, and the decision is supported by substantial evidence, the ALJ's decision must be upheld. *See id.* at 94; 42 U.S.C. § 405(g).

Where, as here, a matter has been referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1), this court reviews de novo the portions of the report to which a timely objection has been made. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023); *see also* Fed. R. Civ. P. 72(b)(3) (noting that "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). "If a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only." *Id.*

**B. Linda's Objections to the R&R**

Linda raises three objections to the R&R, most of which repeat her arguments raised before Judge Memmer. This court addresses all of Linda's objections. Linda's first two objections mirror her arguments in the underlying motion: (1) that the R&R erred in concluding that the ALJ properly assessed Linda's subjective allegations and mental impairments in determining her RFC (Pl. Obj. at 1–8), and (2) that the R&R erred in concluding that the ALJ properly assessed Linda's physical impairments in determining her RFC (Pl. Obj. at 8–15). Linda also raises one new objection here: (3) that the R&R erred in concluding that the ALJ's

evaluation of the medical opinions in the record was supported by substantial evidence. (Pl. Obj. at 15–16.) Each of these objections is discussed in turn.

**1. The R&R did not err in concluding that the ALJ performed a proper assessment of Linda's subjective allegations and mental impairments in determining her RFC.**

First, Linda argues that the R&R "erred in concluding substantial evidence supports the ALJ's assessment of [Linda's] mental impairments and . . . in concluding the ALJ built a logical bridge between the evidence and his findings." (Pl. Obj. at 7.) Within this objection, Linda specifically addresses four elements of the R&R's findings and conclusions, concerning: (a) the ALJ's determination that Linda has a mild limitation in understanding, remembering, and applying information (Pl. Obj. at 3–4); (b) the ALJ's determination that Linda has moderate limitations in interacting with others (Pl. Obj. at 4); (c) the ALJ's determination that Linda has moderate limitations in concentrating, persisting, and maintaining pace (Pl. Obj. at 5); and (d) the ALJ's determination that Linda has a moderate limitation in adapting and managing herself (Pl. Obj. at 5–6).

"Evaluating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (internal citations and quotations omitted). Pursuant to SSR 96-8p, an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. July 2, 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)).

When evaluating a claimant's subjective statements about impairments and symptoms, ALJs follow a two-step framework. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); 20 C.F.R. § 404.1529. First, the ALJ "determine[s] whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. Second, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms such as pain and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id.* at *4. In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* As relevant in this case, the Fourth Circuit has noted:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citing *Craig*, 76 F.3d at 595). "[W]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Harris v. Kijakazi*, No. 21-1853, 2022 WL 2987928, at *1 (4th Cir. July 28, 2022) (quoting *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)). "Under a substantial evidence standard of review, an administrative fact-finder's determinations on [the] issue of credibility should be virtually unreviewable on appeal." *Id.* (citing *Pope v. U.S. Postal Serv.*, 114 F.3d 1144, 1149 (Fed. Cir. 1997)).

The court now addresses all four of Linda's specific arguments as to her subjective allegations and mental impairment in turn.

*a. Linda's mild limitation in understanding, remembering, and applying information*

Linda first argues that the R&R erred in concluding that the ALJ relied on substantial evidence and built a logical bridge between the evidence and his findings as to his determination that Linda has a mild limitation in understanding, remembering, and applying information. (Pl. Obj. at 3–4.) Here, the ALJ adequately addressed Linda's subjective allegations and the medical record regarding her mental impairment, and provided a detailed explanation to support his RFC findings. The ALJ noted that in reports and a hearing before the ALJ, Linda had alleged a limitation of her ability to work because of "forgetfulness" and an inability to complete tasks. (Admin. Tr. at 23–24.) Elsewhere, the ALJ noted that Linda "generally did not complain of symptoms related to understanding and remembering to providers." (*Id*. at 21, 29.) Furthermore, the ALJ referenced Linda's regular reports of "being a primary caregiver for her three grandchildren" and even from time to time "her neighbor's children as well," and determined this demonstrated "an ability to understand, remember, and apply information." (*Id*. at 21, 26, 29.) In addition to Linda's subjective allegations and statements, the ALJ noted that the impartial medical expert in the case, Dr. Joseph Malancharuvil, testified that "[t]he medical evidence of record, including mental status reports, generally shows no serious deficits in memory functions." (*Id*. at 21, 28, 55.) However, the ALJ also considered a separate medical opinion issued by another doctor who had provided reports in the case, Dr. Richard Milan, finding that Linda had "mild limitations in her ability to understand / remember information." (*Id*. at 27.) Considering all of these facts together, the ALJ concluded that Linda "has no more than a mild limitation here." (*Id*. at 20–21, 29.) The ALJ's detailed summary of Linda's

subjective allegations and the medical record represent substantial evidence that the ALJ used to build a logical bridge justifying his conclusion that Linda has only a mild limitation in understanding, remembering, and applying information. *See Arakas*, 983 F.3d at 95 (holding that "ALJs must build an accurate and logical bridge from the evidence to their conclusions" (quotation marks omitted)).

*b. Linda's moderate limitations in interacting with others*

Linda next argues that the R&R erred in concluding that the ALJ relied on substantial evidence and built a logical bridge between the evidence and his findings as to his determination that Linda has only moderate limitations in interacting with others. (Pl. Obj. at 4.) Here again, the ALJ adequately addressed Linda's subjective allegations and the medical record regarding her mental impairment, and provided a detailed explanation to support his RFC findings. The ALJ noted that it was documented in medical reports that Linda had at times alleged that "she had issues getting along with family, friends, and neighbors because she had a short fuse," and "did not get along well with authority figures and had been fired in the past due to problems with coworkers." (Admin. Tr. at 24.) Turning to the medical evidence in the record, the ALJ noted that, on the contrary, the record did show that Linda "generally interacted normally with all [healthcare] providers," and although "she did appear anxious and tearful at times," she did not present "serious deficiencies in eye contact, speech, or conversation," and "providers often noted [that she] was pleasant, cooperative, and in no distress." (*Id*. at 21, 29.) The ALJ referred to Dr. Malancharuvil's statements that Linda "had a mild limitation in interaction" which "in certain circumstances" rose to the level of a moderate limitation. (*Id*. at 28, 55.) The ALJ also referenced a report from Dr. Milan, opining that Linda only had a mild limitation in her ability to interact with others. (*Id*. at 27.) Considering all of these facts, the ALJ concluded that Linda

"has a moderate limitation that limits her to occasional interaction with the public," and that she is better able to work with things than with people. (*Id*. at 20, 28.)

Here, although Linda's subjective allegations suggested that she had had substantial difficulties in interacting with others, the medical evidence conflicted with that suggestion. However, "[w]here conflicting evidence allows reasonable minds to differ, the choice [of how to interpret that evidence] belongs to the Commissioner, and we defer to it." *Calhoun v. Comm'r of Soc. Sec.*, No. 24-1315, 2026 WL 2602326, at *3 (4th Cir., Sept. 3, 2026) (quotation marks omitted). And, a reviewing court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson*, 434 at 653 (quotation marks and alterations omitted). Accordingly, the court does not disturb the ALJ's conclusion, and it finds that the ALJ's detailed summary of Linda's subjective allegations and the medical record represent substantial evidence that the ALJ uses to build a logical bridge to justify his conclusion that Linda has only a moderate limitation in interacting with others. *See Arakas*, 983 F.3d at 95.

*c. Linda's moderate limitations in concentrating, persisting, and maintaining pace*

Linda goes on to argue that the R&R erred in concluding that the ALJ relied on substantial evidence and built a logical bridge between the evidence and his findings as to his determination that Linda has only a moderate limitation in concentrating, persisting, and maintaining pace. (Pl. Obj. at 5.) Once more here, the ALJ adequately addressed Linda's subjective allegations and the medical record regarding her mental impairment, and provided a detailed explanation to support his RFC findings. The ALJ noted that Linda had alleged in reports and a hearing before the ALJ that she "could pay attention for five minutes [but] did not finish what she started or follow instructions well," that "she testified that she . . . had problems

with concentration and task completion," that she "described her thoughts as scattered," and "stated that she had a difficulty with focus." (Admin. Tr. at 24.) The ALJ went on to describe a medical record that was inconsistent with Linda's subjective allegations, noting that "[p]roviders did not observe that [Linda] was overly distractible or slow" despite the fact that she "intermittently complained of problems with racing or ruminating thoughts." (*Id*. at 22, 29.) Again, the ALJ considered opinions from Drs. Malancharuvil and Milan, which both suggested that Linda has a "moderate limitation in her ability to concentrate / persist / maintain pace." (*Id*. at 27–28, 55.) Noting that Linda "was able to take care of her three grandchildren, who, at one point, were all under five years old," the ALJ then concluded that Linda "has a moderate limitation in concentration that would limit her to tasks that can be learned in thirty days or less, and would also prevent production rate or pace work." (*Id*. at 22, 29.) The ALJ added that "[b]ecause of possible problems with distractions, [Linda sh]ould also be limited in her exposure to hazards." (*Id*.)

Once more, it is not the role of this court to reconsider the determinations of the ALJ as to conflicting evidence in the administrative record. *See Calhoun*, 2026 WL 2602326, at *3; *Johnson*, 434 F.3d at 653. So, here too, the court finds that the ALJ's detailed summary of Linda's subjective allegations and the medical record represent substantial evidence that the ALJ used to build a logical bridge to justify the conclusion that Linda has only a moderate limitation in concentrating, persisting, and maintaining pace, as well as the the associated limitations in work recommended by the ALJ. *See Arakas*, 983 F.3d at 95.

*d. Linda's moderate limitation in adapting and managing herself*

Finally, Linda argues that the R&R erred in concluding that the ALJ relied on substantial evidence and built a logical bridge between the evidence and his findings as to his determination

that Linda has a moderate limitation in adapting and managing herself. (Pl. Obj. at 5–6.) As to this limitation, the ALJ adequately addressed Linda's subjective allegations and the medical record regarding her mental impairment, and provided a detailed explanation to support his RFC findings. The ALJ summarized that in reports and a hearing before the ALJ, Linda had alleged that she "needed reminders to shower, eat, and take her medication," "did not finish what she started," and "had problems with concentration and task completion." (Admin. Tr. at 23–24.) The ALJ went on to note that the medical record was not consistent with Linda's subjective allegations as to her ability to adapt and manage herself, noting that "[t]he medical evidence of record shows the claimant did not usually complain about serious problems with adaptation and managing herself." (*Id*. at 22, 29.) The ALJ also again referenced Linda's demonstrated ability to "handle [the] mental demands of caring for three young grandchildren." (*Id*.) The ALJ considered Dr. Malancharuvil's testimony at the hearing, which suggested that Linda has a mild limitation in her ability to adapt and manage herself. (*Id*. at 28, 55.) The ALJ referenced Dr. Milan's report as well, which also opined that Linda only had a "mild limitation[]" in her ability to "adapt / manage herself." (*Id*. at 27.) The ALJ then found that Linda's ability to adapt and manage herself was often further limited by "her reaction to financial and familial stressors." (*Id*. at 22, 29.) Accordingly, despite the determinations of Drs. Malancharuvil and Milan being that Linda had a mild limitation in adapting and managing herself, the ALJ concluded that the record showed that she in fact appeared to have a "moderate limitation in adaptation that would limit her to tasks that could be learned in thirty days or less." (*Id*. at 29–30.)

Here again, the court will not disturb the determinations of the ALJ as to conflicting evidence in the administrative record. *See Calhoun*, 2026 WL 2602326, at *3; *Johnson*, 434 F.3d at 653. Therefore, the court finds that the ALJ's detailed summary of Linda's subjective

allegations and the medical record represent substantial evidence that the ALJ used to build a logical bridge to justify the conclusion that Linda has only a moderate limitation in adaptation and self-management. *See Arakas*, 983 F.3d at 95.

* * *

In sum, the court finds and concludes that the ALJ adequately discussed both Linda's subjective allegations and mental impairments, and that, taken together they demonstrate that the ALJ's findings were supported by substantial evidence. Furthermore, the court finds and concludes that the ALJ's discussion and evaluation of that evidence demonstrated a logical bridge which justified his conclusions as to Linda's limitations with respect to her mental impairments.

**2. The R&R did not err in concluding that the ALJ performed a proper assessment of Linda's physical impairments in determining her RFC.**

Next, Linda contends that the R&R erred in concluding that substantial evidence supports the ALJ's assessment of plaintiff's physical impairments and RFC findings and that the ALJ built a logical bridge between that evidence and his conclusions. (Pl. Obj. at 8–15.) Here too, Linda's argument contains smaller specific subparts, including, in substance, the arguments that: (a) the R&R "erred in concluding that substantial evidence supports the ALJ's assessment of Linda's physical impairments and RFC findings," and by concluding that the ALJ had built a logical bridge between the evidence and the ALJ's findings that "the ALJ did not build himself in his opinion," (*id*. at 8–10, 12–15); (b) the R&R and ALJ "improperly increased [Linda]'s burden of proof by effectively requiring her subjective allegations of her symptoms to be supported by objective medical evidence," (*id*. at 10–11); and (c) the R&R erred in concluding that "the ALJ is not required to perform an explicit function by function analysis" of Linda's impairments. (*Id*. at 11–12.)

*a. The ALJ's assessment was supported by substantial evidence, and the ALJ built a logical bridge between that evidence and his findings.*

As to her physical impairments, Linda first argues that the R&R "erred in concluding that substantial evidence supports the ALJ's assessment of Linda's physical impairments and RFC findings." (*Id*. at 8.) She contends that the R&R built a logical bridge between the evidence and the ALJ's findings that "the ALJ did not build himself in his opinion." (*Id*. at 10.) On the contrary, the record demonstrates that the ALJ relied on substantial evidence in support of his assessment of Linda's physical impairments, and built the required logical bridge.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shelley C.*, 61 F.4th at 353 (quotation marks omitted). And "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid*, 769 F.3d at 865 (quoting *Dyer*, 395 F.3d at 1211). But Fourth Circuit "precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311. If the ALJ "build[s] an accurate and logical bridge from the evidence to their conclusions," and the decision is supported by substantial evidence, the ALJ's decision must be upheld. *See Arakas*, 983 F.3d at 95 (quotation marks omitted); 42 U.S.C. § 405(g).

The ALJ concluded that Linda suffers from three severe physical impairments: "a back impairment, hepatitis C, and a history of pancreatitis." (Admin. Tr. at 19.) The ALJ also noted that Linda suffers from degenerative disk disease and liver disease, but that these, considered individually or together, do not rise to the level of severity of one of the listed impairments in the applicable regulations. (*Id*. at 20.) Additionally, the ALJ referenced that Linda alleged that "her ability to work was limited due to . . . headaches, hypokalemia, . . . fibromyalgia, . . . and dysuria," but also did not find that these rose to the level of impairments under the applicable

regulations. (*Id*. at 23.) In support of the ALJ's conclusions, the ALJ relied on a great deal of medical evidence, summarizing almost two years of medical history with regard to Linda's pancreatitis, (*id*. at 24), and referencing reports concerning her back impairment and hepatitis C covering that same period. (*Id*. at 27–28.) The ALJ also referred to reports prepared by Drs. Robert McGuffin and Michael Koch prior to the hearing on disability which considered her physical impairments and reached the conclusion that Linda "could perform work at the light exertional level." (*Id*. at 27, 122–39, 143–44, 147–48, 154–55, 157–59.) The ALJ further noted that Linda had stated that she "could walk for ten minutes and endorsed problems lifting, squatting, bending, and kneeling," but that she "never sat down and paced a great deal throughout the day," and "cleaned a great deal during the day." (*Id*. at 24.)

The ALJ then went on to articulate how he considered Linda's subjective allegations and the medical evidence on record in coming to his conclusion, stating:

> First, the undersigned finds the opinions of Drs. McGuffin and Koch generally persuasive. They offered support for their opinions with references to evidence at the time of the determinations. The opinions are also generally consistent with the evidence. While the claimant has alleged far greater limitations, the evidence, including inconsistent objective medical findings, does not corroborate a claimant's allegations. A claimant's allegations are given less weight when the record contains weak or inconsistent objective medical findings. The stronger the correlation between the objective findings and the subjective complaints, the more probative the subjective complaints become. Here, the claimant's subjective complaints are out of proportion with the weak and inconsistent objective medical findings contained in the record. The medical records do not support consistent multi-joint inflammation, indicated by joint swelling stiffness, redness and/or warmth. The claimant has not exhibited any significant loss of range of motion, if any loss was exhibited, at any time since the alleged onset date. There is no evidence of reduced grip strength in the hands, loss of color in the allegedly affected regions, muscle spasm with examination, or muscle atrophy. The medical records also do not contain notes that the claimant exhibited difficulty-initiating movement, difficulty moving generally, or muscle tremors (Exhibits

> B7F, B16F, B17F, B23F, B31F). In considering any pain related to her pancreatitis and back impairment, or symptoms related to hepatitis C, the undersigned finds she would still be capable of light work with postural and environmental limitations.

(*Id*. at 27–28.)

Taken together, the ALJ's summary of the evidence demonstrates, and the court concludes, that the ALJ considered more than a scintilla of evidence, and considered relevant evidence a reasonable mind might accept as adequate to support the conclusions that the ALJ reached. *See Shelley C.*, 61 F.4th at 353; *Pearson*, 810 F.3d at 207. And although the allegations raised by Linda conflict in some places with the medical evidence cited by the ALJ, it is not the province of this court to reweigh that evidence, and the court must defer to the analysis of that evidence made by the ALJ. *See Calhoun*, 2026 WL 2602326, at *3; *Johnson*, 434 F.3d at 653. Finally, the court concludes that the ALJ did not "go[] straight from listing evidence to stating a conclusion," *Thomas*, 916 F.3d at 311, but rather provided sufficient explanation of how he was interpreting and weighing the evidence to demonstrate "an accurate and logical bridge from the evidence to his conclusion." *Arakas*, 983 F.3d at 95.

*b. The ALJ did not improperly increase Linda's burden of proof.*

Linda next argues that the R&R and ALJ "improperly increased [Linda]'s burden of proof by effectively requiring her subjective allegations of her symptoms to be supported by objective medical evidence." (Pl. Obj. at 10–11.) In support of this argument, Linda relies, predominantly, on the Fourth Circuit's decision in *Arakas*. *See Arakas*, 983 F.3d at 95–97. There, an ALJ considered whether an applicant was entitled to disability insurance benefits and whether the applicant's subjective allegations were adequate to demonstrate that she suffered acutely from fibromyalgia. First, the court noted that it had "consistently held that while there must be objective medical evidence of some condition that could reasonably produce the pain,

there need not be objective evidence of the pain itself or its intensity." *Arakas*, 983 F.3d at 95. The court next observed that fibromyalgia's "symptoms are entirely subjective" and that the ALJ "improperly discount[ed the applicant's] subjective complaints of pain and fatigue, based largely on the lack of objective medical evidence substantiating her statements." *Id*. at 96. The court then held, narrowly, that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. *Id*. at 97.

In this case, although fibromyalgia is one of the conditions that Linda alleged limits her ability to work, (Admin. Tr. at 24), Linda does not specifically identify which of her subjective allegations she believes the ALJ failed to appropriately address, but simply refers generally to "her allegations of her symptoms." (*Id*. at 10–11.) It is true that the ALJ did rely on objective medical evidence in support of his analysis of Linda's medical conditions in this case. (*Id*. at 28–29.) However, the ALJ also considered Linda's own statements regarding her capacity to work and her day-to-day activities, noting that she herself had stated that she "could walk for ten minutes and endorsed problems lifting, squatting, bending, and kneeling," but that she "never sat down and paced a great deal throughout the day," and "cleaned a great deal during the day." (*Id*. at 24.) So, while the ALJ might have run afoul of the Fourth Circuit's holding in *Arakas* had he contained his analysis to only the "weak and inconsistent medical findings" corroborating Linda's allegations, (*id*. at 28), the ALJ also noted Linda's own subjective observations of her capabilities, which contradicted her other subjective allegations as to the severity of her symptoms. Accordingly, the court determines that the ALJ did not impermissibly rely solely on

objective medical evidence, but also relied on Linda's own subjective descriptions of her activities, and, therefore, did not "improperly increase[ Linda]'s burden of proof."

*c. The ALJ performed an adequate function-by-function analysis.*

Finally, Linda argues that the R&R erred in concluding that "the ALJ is not required to perform an explicit function by function analysis" of Linda's impairments. (Pl. Obj. at 11–12.)

The Fourth Circuit has held that "[e]valuating an RFC requires an ALJ to consider all of the claimant's physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work." *Dowling*, 986 F.3d at 387 (internal citations and quotations omitted). This does not require an ALJ to painstakingly and mechanically discuss each element of those impairments as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Reid*, 769 F.3d at 865 (quotation marks omitted).

Although Linda argues here that the R&R misinterpreted the law of the Fourth Circuit with regard to whether an ALJ must perform an explicit function-by-function analysis of impairments, (Pl. Obj. at 11–12; R&R at 31–32), the court need not reach that issue, because, upon *de novo* review of the record, the court finds that the ALJ did perform a function-by-function analysis of Linda's impairments. As more thoroughly discussed above, the ALJ provided a comprehensive narrative explanation of Linda's symptoms and impairments, detailing how the evidence supports each conclusion, in accordance with the requirements set forth in the relevant regulations. (*See* Admin. Tr. 20–31.) The decision effectively incorporates both medical facts and nonmedical evidence to substantiate the ALJ's findings. (*Id.*) In relevant part to Linda's objection, the ALJ provides a detailed account of Linda's pancreatitis, back pain, and hepatitis C over the relevant period. (*Id*. at 24, 27–28.) The ALJ also describes the nature of the

limitations on Linda's ability to perform a range of activities consistent with the ALJ's determination that Linda is capable of light work. (*Id.* at 29.) Therefore, the court finds and concludes that the ALJ adequately performed a function-by-function analysis of Linda's impairments.

* * *

In sum, the court finds and concludes that the ALJ adequately discussed Linda's physical impairments and that the ALJ's findings were supported by substantial evidence. Furthermore, the court finds and concludes that the ALJ's discussion and evaluation of that evidence demonstrated a logical bridge which justified his conclusions as to Linda's limitations with respect to her physical impairments.

**3. The R&R did not err in concluding that the ALJ performed a proper assessment of the medical opinions of Dr. Milan and Dr. Malancharuvil.**

Linda's last argument is that the R&R erred in concluding that the ALJ adequately addressed the supportability and consistency of the opinions of Dr. Milan and Dr. Malancharuvil. (Pl. Obj. at 15–16.) Specifically, Linda contends that "the ALJ failed to sufficiently explain how he arrived at his assessments of [the two doctors'] opinions." (*Id.* at 15.)

There are five factors for an ALJ to consider when determining the persuasiveness of a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 416.920c. Supportability and consistency are the two "most important factors" for an ALJ to consider when determining "how persuasive [they] find a medical source's medical opinions . . . to be." 20 C.F.R. § 416.920c(b)(2). "Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's

opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (internal citation omitted).

Dr. Milan opined that Linda "had a moderate limitation in her ability to concentrate / persist / maintain pace, and mild limitations in her ability to understand / remember / apply information, interact with others, and adapt / manage herself." (Admin. Tr. 28.) The ALJ found Dr. Milan's opinion persuasive because it was supported in part by the evidence in the record and consistent to some degree with the record. (*Id*. at 29.) But, the ALJ further found that "the claimant requires additional limitations" in line with those suggested by Dr. Malancharuvil, whose opinion the ALJ found to be "more consistent" with the evidence in the record. (*Id*.) The ALJ's discussion of Dr. Milan's opinion is brief, and the ALJ's discussion of Dr. Malancharuvil's opinion is substantially more extensive. Because it is this opinion which suggests that Linda suffers from more substantial limitations, the court turns to it now.

Regarding Dr. Malancharuvil's opinion, the ALJ noted that:

> Dr. Malancharuvil stated the record supported diagnoses of bipolar disorder with major depressive disorder, generalized anxiety disorder, borderline personality disorder, and polysubstance abuse (opiate, alcohol, amphetamine, and marijuana). [He] noted the claimant was in sustained treatment for opiate addiction, and that it was unclear about other substance use. However, he stated she was at least in partial remission for the others. However, overall, he stated the use was not a primary issue, noting the claimant was functioning fine. [He] noted the claimant's mental status examinations were functionally intact, giving an example of appropriate behavior, appearance, and orientation and other normal findings. He cited other normal examinations as well. [He] stated her mood disturbances were likely initiated by substance abuse or aggravated by it. In terms of the B criteria, he opined the claimant had a mild limitation. [H]e stated the claimant had a mild limitation in interaction as well, but stated in certain circumstances it was moderate. [He] stated the claimant had moderate limitations in the remaining functional domains as well. [H]e opined the claimant could perform simple to detailed tasks, preferably object-oriented work, which means working with things rather than people. [He]

> stated the claimant could occasionally deal with the general public, and opined that she should not work with hazardous or fast-moving machinery due to distractibility, citing this as a reason to prevent fast paced work as well.

(Admin. Tr. 29 (citations omitted).)

The ALJ found Dr. Malancharuvil's opinion to be "very persuasive" and found that "his opinion is consistent with the evidence as a whole." (*Id.* at 29.) The ALJ then described how the medical evidence and subjective allegations raised by Linda were consistent with Dr. Malancharuvil's opinion. (*Id.* at 29–31 (citing *id*. at 1426–2296, 2310–2355, 2366–2382, 2531–2700, 2714–2899, 2904–2917, 3077–3093).) The ALJ's RFC findings were based on Linda's own testimony, the medical evidence in the record, and the opinions of Dr. Milan and Dr. Malancharuvil. (*Id.* at 28–31.) Considering the evidence in its entirety, the court finds and concludes that the ALJ adequately articulated a basis for the "supportability" and "consistency" of Dr. Milan and Dr. Malancharuvil's opinions. *See Oakes*, 70 F.4th at 212.

## III. CONCLUSION AND ORDER

After review of Linda's objections and the record, the court finds that the ALJ's decision was legally sufficient and supported by substantial evidence. Accordingly, it is hereby ORDERED as follows:

1. The Magistrate Judge's Report and Recommendation (Dkt. No. 20) is ADOPTED;
2. The Plaintiff's objections (Dkt. No. 21) are OVERRULED;
3. The Commissioner's motion for summary judgement (Dkt. No. 19) is GRANTED;
4. The Plaintiff's motion for summary judgment (Dkt. No. 18) is DENIED; and
5. The Commissioner's decision is AFFIRMED;

A judgment order consistent with this opinion will be entered separately.

Entered: September 28, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge